**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**VIRGINIA TURNER,**

        **Plaintiff,**

**v.**                                        **Case No. 8:08-cv-65-T-TBM**

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

        **Defendant.**

_____/

**O R D E R**

      Plaintiff, Virginia Turner, seeks judicial review of the denial of her claim for Social Security disability benefits. For the reasons set out herein, the decision is affirmed.

I.

      Plaintiff was forty-five years of age at the time of her administrative hearing in July 2007. She stands 5', 6" tall and weighed 235 pounds. Plaintiff has a twelfth-grade education but did not graduate or obtain a GED. Her past work experience was as a bindery helper for a publishing company, dietary technician, baker, and housekeeper. Plaintiff applied for disability benefits in December 2004,[1] alleging disability as of July 12, 2004, by reason of back and neck [pain], pinched nerves, and "bad discs." The Plaintiff's application was denied originally and on reconsideration.

_____

[1]The SSA determined Plaintiff had a protective filing date of July 26, 2004. (R. 78).

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ") via video-conference. The Plaintiff was represented at the hearing by counsel and testified in her own behalf.

In essence, Plaintiff testified that she is unable to work because she cannot stand up, her legs and back hurt, and she has bad headaches. Plaintiff has bulging and herniated discs in her neck that cause sharp pain; sometimes she can hardly see or hold her head. The pain radiates from her shoulder all the way down her back and into her leg and foot. Her leg gets so numb that it hurts. Her neck gets swollen, and she experiences occasional swelling in her foot. Plaintiff had a diskectomy in 2004 but still has constant pain in her back. She said it gets so bad at times that she can hardly move and she has to get her cane so that she can walk. Sometimes she cannot walk. Plaintiff said her back also fails, and she has fallen a couple times. She also has problems with her right shoulder. According to Plaintiff, the bone on her [rotator] cuff needs to be scraped. It causes her pain when she does things; she can hardly move it. Just moving her arm or trying to lift something causes pain. She does home exercises recommended by her doctor to help her neck, shoulder, and back. She also applies heat and ice. These things help a little. She also gets epidural injections in her neck as needed for pain. They help for a little while. Plaintiff testified that she also gets headaches constantly. Mostly she gets them in the back of her head; they hurt so bad that she "can't hardly see," and she gets dizzy at times. She takes some medication for them, which helps a little, but the headaches never go away.

Plaintiff also has diabetes, thyroid problems, a goiter, and acid reflux. She had her thyroid removed prior to the hearing. She testified that her weight is up over the last year or

two, and she attributes the weight gain to her thyroid problem.  To remedy this, Plaintiff has put herself on a diet.  Regarding her acid reflux, Plaintiff said that it gets so bad that she thinks she is having a heart attack.  She has gone to the emergency room twice because of it.  Plaintiff takes medication for it, which works pretty well but makes her itchy.  She also has asthma and uses an albuterol inhaler, mostly when she gets a cold.  It usually brings the condition under control; if it does not, she uses a pump machine.

As for her physical abilities, Plaintiff testified that she can walk about 50 feet, and it takes her about 10 minutes to do so.  If she tries to walk further, her back hurts.  She said that after coming to the hearing, she is going to feel it in her back and will not be able to get out of bed the next day.  Plaintiff said that she can stand for about 15 to 20 minutes.  She has problems sitting because of her back and tailbone and where she had her back surgery.  Plaintiff stated that she can sit for 25 to 30 minutes at the most, and when she has to stand up she gets sharp pain.  She can bend down some and she can get on her knees but it hurts.  As for her neck, Plaintiff said that she cannot move it likes she wants to; it hurts to move side to side and up and down because of the her herniated discs.  Plaintiff does not lift more than some clothes.  Her shoulder hurts when she reaches overhead, but she can reach some.

Plaintiff lives with her husband, three of their children (ages 7, 15, and 17), three of her grandchildren (ages 3, 7, and 9),[2] and a pet rabbit.  She has taken care of her grandchildren for four years and has custody of them.  The state gives her about $730.00 per month for their care.  Plaintiff's 17-year-old son is mentally retarded and has bipolar disorder

---

[2]Plaintiff also testified that she has four adult children.

3

and schizophrenia.  She gets disability and SSI payments for him.  Plaintiff also gets a small amount per month in child support and receives food stamps.

Regarding her daily activities, Plaintiff testified that she has a driver's license and drives every day.  She takes and picks up her grandbaby and daughter from day care.  Her 15 year old son helps care for the children.  She washes clothes and cooks but does not make beds, and she sweeps a little bit and hangs clothes on the clothesline or puts them in the dryer.  According to Plaintiff, she cannot do these things the way she used to.  Plaintiff also drives to the doctor and grocery store, where she occasionally uses one of the motorized carts.  She does not like grocery shopping because it makes her back hurt.  Plaintiff watches some television but does not listen to music.  She does not read much because she has a problem with her right eye.  Plaintiff used to play softball and basketball but can no longer play either or run.  Plaintiff does not do any gardening, raking, or mowing.  She does not visit with friends the way she once did because of where they live.  Now she visits with them about once every six months.  Plaintiff goes to church two or three times a week.  She sleeps about four to six hours a night.  She gets tired during the day but does not nap because she cannot go to sleep.

Plaintiff last worked in 2004 as a bindery helper at Auto Traders.  She made books and magazines.  She had an automobile accident in 2003 and surgery in February 2004.[3] Plaintiff testified that she tried to return to work after that but could not.  She left on her own accord and got short-term disability benefits for about six months.  Thereafter, Plaintiff received long-term disability benefits, which she was still receiving at the time of the hearing.

[3]Plaintiff has a lawsuit pending with respect to this accident.  She also had an automobile accident in 1997.

She receives about $980.00 a month. Before working at Auto Traders, Plaintiff worked for some temporary agencies. Before that, she worked for an elder care company. She started as a dietary aide, which she did for about a year. She then worked as a baker. She cooked pies, put the dried and frozen goods up, and "did juice." She performed that work for about two or three years. Plaintiff also worked as a cook, cooking breakfast and lunch for older people in a type of elder care home. Additionally, Plaintiff worked as a housekeeper for about two years. When asked by the ALJ about self-employment earnings in 2006, the Plaintiff denied that she worked at that time. (R. 357-95).

Bonnie Martindale, a vocational expert ("VE"), also testified. At the outset, the expert addressed Plaintiff's past work after having reviewed the vocational exhibits in Plaintiff's claim file. The VE then classified Plaintiff's past work pursuant to the Dictionary of Occupational Titles ("DOT"). According to the VE, Plaintiff's past relevant work was classified as a binder helper (medium exertional work, SVP 2); a dietary aide, (medium exertional work, SVP 2); housekeeping (light exertional work, SVP 2); institution cooking (medium exertional work, SVP 6); a bakery cook, (light exertional work, SVP 6); and child care provider, (light exertional work, SVP 4).[4] Upon an assumption of an individual of Plaintiff's age, education, and work experience capable of light exertional work with limitations for occasional climbing, balancing, stooping, kneeling, crouching and crawling, the VE opined that such a person could perform Plaintiff's past work in housekeeping and as a bakery cook and child care provider (the light exertional jobs), both as performed by Plaintiff and as performed generally in the national economy. Next, assuming an individual

---

[4]The VE did not provide the DOT numbers for these positions.

capable of performing sedentary exertional work who required the occasional postural

limitations set forth above and a sit/stand option, the VE testified that such a person could not

perform any of Plaintiff's past work but could perform other jobs existing in significant

numbers in the regional or national economy such as a ticket checker, document preparer, and

phone clerk.[5]  The VE testified further that, aside from the need for a sit/stand option, those

jobs were consistent with the descriptions in the DOT.  Nevertheless, based on her

experience, such type work would still be available.  When asked whether there would be any

jobs available if the person were incapable of doing competitive work on a sustained basis,

eight hours a day, five days a week, the VE responded there would not.  Next, the VE testified

that for unskilled work, employees are expected to be on task 85 to 90 percent of the time,

and if an individual was not capable of such, no work would be available.  Similarly, if an

individual's impairment resulted in more than two absences per month, the VE indicated that

such an individual would generally be released from work.  (R. 395-401).

Also before the ALJ were medical records outlining the Plaintiff's medical history.

These matters are addressed herein as necessary.

By his decision of August 31, 2007, the ALJ determined that while Plaintiff has

severe combined impairments related to back pain status post diskectomy, obesity, diabetes

mellitus, goiter/thyroid problems, and headaches, she nonetheless had the residual functional

capacity to perform a limited range of light exertional work with occasional postural

limitations.  Upon this finding and consideration of vocational expert testimony, the ALJ

concluded that Plaintiff could perform past work as a housekeeper, bakery cook, and

---

[5]The VE did not provide DOT numbers for these jobs.

childcare provider (as well as other work at the sedentary exertional level). Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 13-20). The Appeals Council denied Plaintiff's request for review.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises three claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The ALJ failed to make proper findings regarding the physical and mental demands of Plaintiff's past work and therefore erred in determining that Plaintiff could return to her past work as a child care provider, bakery cook, and housekeeper;

(2) The ALJ failed to properly consider [Plaintiff's] subjective complaints of pain; and

(3) The ALJ failed to properly develop the record by failing to pose a hypothetical question to the VE which comprehensively described her impairments.

By her first claim, Plaintiff challenges the ALJ's finding that she could perform past relevant work as a childcare provider, bakery cook, and housekeeper. First, Plaintiff argues that the ALJ erred by concluding that she had past relevant work as a childcare provider on the basis that she cared for her three grandchildren who were awarded to her by the state and for which she received monthly payments from the state for caring for them. Second, Plaintiff argues that the ALJ erred by concluding that she could perform her past work as a cook/dietary aid (baker) because her description of the physical requirements of that work exceed the residual functional capacity for light work as determined by the ALJ. Plaintiff also faults the ALJ for not addressing the skill level of the job and making adequate inquiry into its physical and mental demands.[6] Third, Plaintiff summarily asserts that the ALJ erred by failing to ascertain the mental demands or skill levels of her past work, contrary to the requirements of Social Security Ruling ("SSR") 82-62. Lastly, Plaintiff contends that it is unclear what the ALJ relied upon in determining her prior work because the work history and disability reports (she completed) were "scant and incomplete," and no testimony was obtained regarding the physical and mental demands of her past work. Thus, Plaintiff asserts

---

[6]In support thereof, Plaintiff cites *Schnorr v. Bowen*, 816 F.2d 578 (11th Cir. 1987). In particular, Plaintiff relies on the court's statement that, "[w]here there is no evidence of the physical requirements and demands of the claimant's past work and no detailed description of the required duties was solicited or proffered, the [Commissioner] cannot properly determine whether the claimant has the residual functional capacity to perform [her] past relevant work." *See id.* (citing *Nelms v. Bowen*, 803 F.2d 1164 (11th Cir. 1986)).

that her case should be remanded to obtain additional testimony from her about past work and vocational expert testimony as to the skill level of the same. (Doc. 22 at 10-13).

The Commissioner counters that substantial evidence supports the ALJ's determination that Plaintiff could perform her past relevant work as a housekeeper, bakery cook, and childcare provider as those jobs are generally performed. According to the Commissioner, Plaintiff's description of prior duties (as she performed the jobs) are irrelevant given the ALJ's finding that she could perform her past work as such is performed generally. Further, the Commissioner contends the ALJ's finding is supported by the VE's testimony that Plaintiff's past work as a bakery cook, childcare provider, and housekeeper are generally performed at the light exertional level. He contends further that, even assuming the ALJ erred in classifying Plaintiff's child care activities as past relevant work as a childcare provider on the basis of state payment, the error is harmless given that Plaintiff can still perform two other jobs, as well as a significant number of jobs in the economy. Lastly, noting the written descriptions in the record and the testimony of Plaintiff and the VE, the Commissioner disputes Plaintiff's assertion that the record evidence addressing her past job duties was insufficient. (Doc. 24 at 3-6).

In reaching his decision, the ALJ applied the five-step sequential evaluation process dictated by the Regulations. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ decided the case at step four, and made an alternative step-five finding. At the fourth step, the ALJ must determine whether a claimant is capable of performing her past relevant work.[7] That review

---

[7]Under the regulations, past relevant work is work a claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn it. 20 C.F.R. § 404.1565(a). "Substantial gainful activity" is "work activity that is both substantial and gainful." *See* 20 C.F.R. § 404.1572. "Substantial" work activity is "work

involves the assessment of the claimant's residual functional capacity and requires consideration of the physical and mental demands of her former work. In this regard, "the ALJ has the duty to fully investigate and make explicit findings as to the physical and mental demands of the claimant's past relevant work and to compare that with what the claimant herself is capable of doing before [the ALJ] determines that she is able to perform her past relevant work." *Nimick v. Sec'y of Health & Human Servs.*, 887 F.2d 864, 866 (8th Cir. 1989) (referencing SSR 82-62 and 20 C.F.R. § 404.1520(e)); *see also Nelms*, 803 F.2d at 1165. While the claimant bears the burden at this step of demonstrating an inability to return to her past relevant work, the ALJ has a concomitant duty to develop a full record in this regard. *See Lucas v. Sullivan*, 918 F.2d 1567, 1574 n. 3 (11th Cir. 1990) (citing *Schnorr*, 816 F.2d at 581; *Nelms*, 803 F.2d at 1165).

A determination that a claimant can perform her past relevant work, and thus is not disabled, is appropriate where the claimant retains the residual functional capacity to perform the actual functional demands and job duties of a particular past job <u>or</u> the functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-62, 1982 WL 31386, *3 (S.S.A.);[8] SSR 82-61, 1982 WL 31387, * 2 (S.S.A.). Where it is determined that a claimant can perform her past job as she performed it, the claimant's statements regarding past work are generally sufficient for determining the

---

activity that involves doing significant physical or mental activities" and "gainful" work activity is work activity done "for pay or profit." *Id.* Courts considering this issue all hold that past relevant work must have been substantial gainful activity or it cannot be considered. *Vaughn v. Heckler*, 727 F.2d 1040, 1042 (11th Cir. 1984); *Boyes v. Sec. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *Lauer v. Bowen*, 818 F.2d 636, 639 (7th Cir. 1987).

[8]Social Security Rulings are binding on all aspects of the Social Security Administration. *Hall v. Schweiker*, 660 F.2d 116, 119 n. 4 (5th Cir. Unit A Sep. 1981).

skill level, exertional demands and nonexertional demands of such work. SSR 82-63 at *3;

*see also* SSR 82-61 at *2 (stating that a vocational report completed by the claimant may be

sufficient to furnish information about past work). And, where it is determined that a

claimant can perform a past job as it is usually performed in the national economy, an ALJ

may rely upon job descriptions set forth in the DOT. *See* SSR 82-61 at *2.

 Here, the ALJ determined that Plaintiff retained the residual functional capacity to

perform light exertional work with occasional postural limitations,[9] and therefore was capable

of performing past relevant work as a housekeeper, bakery cook, and childcare provider.[10] (R.

13, 18). Referencing a "Work History Report" form that Plaintiff completed in conjunction

with her application for benefits, the ALJ noted that Plaintiff had worked as a housekeeper

from 1993 to 1995, a bakery cook from 1996 to 1999, and that she had been a childcare

provider for her grandchildren for four years. (R. 18). He noted further that Plaintiff had

indicated that the housekeeper and bakery cook jobs involved lifting no more than 20 pounds

and required walking and standing most of the day. (R. 18). The ALJ also addressed

Plaintiff's past work with the VE, who testified that those jobs were performed at the light

exertional level, both as performed by Plaintiff and as performed generally in the national

economy. The VE also testified that the noted jobs were consistent with the descriptions in

---

[9]Light work is defined as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category may require a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, the claimant must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b).

[10]To the extent Plaintiff contends the ALJ found she could perform her past work as a dietary aide, the record reveals otherwise. (R. 18).

the Dictionary of Occupational Titles ("DOT"), and that Plaintiff could perform those past

jobs given the functional capacity to perform light exertional work with occasional postural

limitations. Thereafter, the ALJ concluded:

> A claimant will be found "not disabled" when it is
> determined that she retains the residual functional capacity to
> perform her past relevant work, either as actually performed
> or as generally performed in the national economy.
> Considering the testimony of the vocational expert and
> comparing the claimant's residual functional capacity with
> the physical and mental demands of her past work as a
> housekeeper, a bakery cook, and a childcare provider, the
> undersigned finds that the claimant is able to perform those
> jobs as actually and generally performed. Accordingly, the
> claimant is not disabled.

(R. 18).

At the outset, I agree with Plaintiff that the ALJ erred by finding that she had past

relevant work as a childcare provider. There is no record evidence that Plaintiff's caring for

her grandchildren resulted in "gainful" employment as defined in the regulations. It clearly

appears that Plaintiff received the funds from the state to be used for supporting her

grandchildren, not that she received the funds as profit for caring for them. The ALJ failed to

make this distinction. If the ALJ's other findings with respect to past relevant work are

adequate, this error is harmless. For the reasons that follow, I find that it is.

I also find that the ALJ erred by concluding that Plaintiff could do past relevant work

as a housekeeper and bakery cook as she performed both jobs, but he did <u>not</u> err by finding

that she could perform those jobs as such are performed generally in the national economy.

As urged by Plaintiff, her written work history reports are not a model of clarity or detail.

*See, e.g.*, (R. 82-88, 96-98, 106-07, 150). Nonetheless, upon reviewing them, I find that they

are sufficient. To this extent, Plaintiff's work reports support her assertion on appeal that the

requirements of those jobs as reported by her exceed the ALJ's residual functional determination of light work with occasional postural limitations.  *See* (R. 83, 87).  By those reports, Plaintiff's description of her work as a baker and housekeeper required standing, walking, and stooping and/or other postural limitations that exceed that found by the ALJ.  However, as testified by the VE, the exertional and nonexertional demands of those jobs, per the DOT, do not exceed the ALJ's residual functional capacity determination.  While Plaintiff correctly notes that the VE did not include the DOT numbers for these jobs, my review of the DOT reveals that both positions are classified as light exertional work that do not require more than occasional postural limitations.[11]  *See* DOT §§ 305.281-010 (cook/baker), 321.137-010 (housekeeper).  To the extent Plaintiff complains that the ALJ did not identify the skill level or the mental demands of these jobs, I disagree.  In this regard, the ALJ stated, "[c]onsidering the testimony of the vocational expert and comparing the claimant's residual functional capacity with the physical and mental demands of her past work as a housekeeper, a bakery cook, and a childcare provider, the undersigned finds that the claimant is able to perform those jobs . . ." (R. 18).  While the ALJ could have articulated more clearly the mental demands of these jobs, his decision reveals that such was considered.  Notably, Plaintiff does not allege any mental limitations or restrictions that the ALJ should have considered but did not.  As such, any error in this regard is harmless.  As for the skill level,

---

[11]I could not find a position listed in the DOT classified as a "bakery cook."  The DOT number identified for this position is for a person who cooks and/or bakes in domestic services.  To the extent this is incorrect, Plaintiff still could perform the housekeeping job, as well as the sedentary exertional jobs identified by the VE (ticket taker - DOT § 219.587-010, document preparer - DOT § 249.587-018, and phone clerk - DOT § 209.567-014).  According to the VE, these jobs could even be performed with additional restrictions for occasional postural limitations and a sit/stand option.  (R. 400).

each job is considered to have a specific vocational preparation level of 2, which means anything beyond short demonstration, up to and including one month. There is no indication in the record that Plaintiff is unable to meet that skill level and she has not asserted any mental limitations. To the extent the ALJ erred in this regard, it is likewise harmless. Remand on these grounds would serve no purpose. Finally, while Plaintiff contends that there are no written records describing her housekeeping work, she is incorrect. *See* (R. 85, 87).

By her second claim, Plaintiff asserts that the ALJ committed factual and legal error when assessing the credibility of her subjective complaints. First, Plaintiff takes issue with the ALJ's findings that her allegations of difficulty standing and walking due to pain are "out of proportion to the minimal physical examination findings and diagnostic test findings," and "treatment notes reveal [Plaintiff] has a normal gait, no problems ambulating without an assistive device and . . . is neurologically intact." According to Plaintiff, the medical record as a whole does not support that examination and test findings were "minimal." Rather, Plaintiff points to records from her treating physicians, Drs. Robert C. Nucci (orthopedic surgeon) and Jairo D. Libreros-Cupido (neurologist), spanning the years 2004 through 2007, which contain findings such as positive straight leg raising test, positive Spurlings test, numbness in the feet and hands, and walking with a right-sided limp or an antalgic gait, all of which are more than minimal findings. Plaintiff also contends that her treating doctors' reports are fully supported by MRI reports from July and August 2003, EMG studies done in June 2004, and an MRI of her right shoulder done in September 2003. By Plaintiff's reading of the evidence, these medical records fully support her allegations regarding the severity of her neck and low back pain, the frequency of her headaches, the numbness in her extremities,

and her right shoulder pain.  Plaintiff also contends that there is no credible medical evidence that contradicts the findings of Drs. Nucci and Libreros-Cupido and their findings fully support her allegations.  Second, Plaintiff faults the ALJ for relying on her doctors' silence with respect to functional limitations and the ability to work.  According to Plaintiff, doing so contradicts the holding in *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).  Third, Plaintiff summarily contends that the ALJ failed to comply with the "pain standard" applicable in this circuit by not fully considering the multiple clinical signs observed by almost every doctor of record.  Plaintiff also faults the ALJ for accepting only those portions of Dr. Nucci's and Dr. Libreros-Cupido's treatment records that support an ability to work and ignoring the portions of their records that support her allegations of disability.  Fourth, Plaintiff complains that the ALJ erred by concluding that her "general credibility was in question" because she was unable to explain self-employed earnings of $10,864.00 in 2006. Plaintiff contends that her long-term disability payments explain this amount.  Fifth, Plaintiff argues that the ALJ erred by rejecting her allegations on the basis of her daily activities.  In support thereof, Plaintiff cites *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) and *Hogard v. Sullivan*, 733 F. Supp. 1465, 1469 (M.D. Fla. 1990).  For these reasons, Plaintiff urges that a remand is warranted and her testimony should be taken as true.  (Doc. 22 at 13-19).

The Commissioner counters that the ALJ properly considered Plaintiff's subjective complaints of pain and found that she retained the functional capacity to perform light exertional work.  In response to Plaintiff's particular arguments, the Commissioner contends that the ALJ did not misinterpret the medical evidence when he found that the physical examinations and test findings were "minimal."  According to the Commissioner, the ALJ did

not equate these findings to "normal" and without significant pain. The Commissioner also points out that the ALJ specifically found that Plaintiff's impairments could reasonably be expected to generally produce the symptoms alleged; certain medical records indicated improvement and an expected return to work; and notations in her treating doctors' records revealed only a 14 percent impairment rating, limited physical restrictions, and unchanged findings on examination. Regarding her childcare activities, the Commissioner asserts such activities are appropriately considered along with other factors when assessing credibility. Citing *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 596 (6th Cir. 2005), the Commissioner also disputes Plaintiff's assertion that it was improper for the ALJ to rely on the lack of physical restrictions by a physician when discounting subjective allegations. By this argument, the Commissioner asserts it is proper to do so and notes that this court in *Stanton v. Astrue*, No. 3:07-cv-015-J-TEM, 2008 WL 725595, *4 (M.D. Fla. Mar. 17, 2008), recently rejected [distinguished] the Eleventh Circuit's statement to the contrary in *Lamb*. Furthermore, the Commissioner notes that the regulations in effect at the time of *Lamb* were changed significantly in 1991 when the SSA published final rules governing the standards for evaluating medical source evidence. Lastly, the Commissioner concedes that the ALJ noted the possibility of secondary gain as it related to Plaintiff's ongoing lawsuit, but contends that Plaintiff's inability to explain her earnings reflected on whether she was a reliable historian and not whether her testimony was forthcoming. (Doc. 24 at 6-12).

In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the

alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Id.*; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). The failure of the ALJ to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Hale*, 831 F.2d at 1012.

Upon careful consideration of the record, I am obliged to conclude that the ALJ applied the correct standard and his reasons for discounting (in part) Plaintiff's subjective allegations are supported by substantial evidence. Here, the ALJ accurately recounted Plaintiff's testimony and cited to the applicable regulations and ruling when assessing the same. (R. 14-15). Proper application of the regulatory standard will satisfy this circuit's pain standard. *See Wilson,* 284 F.3d at 1226. To this end, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to generally produce the symptoms alleged, but that Plaintiff's statements concerning the intensity, persistence and limiting

effects of the symptoms were not entirely credible. (R. 17). Thus, to the extent Plaintiff contends the ALJ failed to correctly apply the appropriate standard, the contention fails.

As for the ALJ's assessment of Plaintiff's subjective allegations, while Plaintiff's arguments are not wholly without merit, the ALJ provides adequate reasons for discounting her allegations of disabling limitations. Upon review of the medical record, I agree with Plaintiff that the findings noted on examination and diagnostic testing are more than "minimal."[12] That being said, those findings do not necessarily establish Plaintiff's testimony of disability. The same is true with respect to Plaintiff's urging that no credible medical evidence contradicts the findings of Drs. Nucci and Libreros-Cupido. While these doctors noted rather significant findings on examination and diagnostic testing, such findings do not demonstrate a total inability to work when viewed in conjunction with the entirety of the record. Moreover, in the face of these findings, Dr. Libreros-Cupido recommended in March 2005 that Plaintiff avoid "heavy lifting and repetitive flexion or extension of the cervical and lumbar spine." (R. 272). This recommendation is entirely consistent with the ALJ's finding that Plaintiff retained the functional capacity to perform light and sedentary work with occasional postural limitations. To the extent Plaintiff faults the ALJ for discounting her allegations of difficulty standing and walking, it is worth noting that her treating neurologist did not recommend that she avoid such. On this point, I disagree with Plaintiff that the court in *Lamb* held that a doctor's silence with regard to functional capacity does not support the finding that a claimant is capable of work. Rather, the court in that case stated, in dicta, that

---

[12]I also agree with Plaintiff that the ALJ's citation to secondary gain and an inability to explain self-employed earnings do not necessarily establish valid reasons for discounting her credibility.

where silence by a doctor is susceptible to one or more inferences, no inference should be inferred. *See Lamb*, 847 F.2d at 703. Here, Dr. Libreros-Cupido specifically commented on Plaintiff's restrictions; thus, the reasonable inference is that Plaintiff is capable of doing those activities not identified in the restrictions. It is unreasonable to infer that the doctor recommended other restrictions, including restrictions on walking and standing, but chose not to mention them. On this point, I agree with the court in *Stanton* that the Eleventh Circuit's dicta in *Lamb* is distinguishable (and not controlling as dicta). *See Stanton*, 2008 WL 725595, *4. Additionally, while the ALJ did not mention all of the "multiple clinical signs" observed by the doctors of record, there is no requirement that he do so. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (noting there is no rigid requirement than the ALJ specifically refer to every piece of evidence in his decision). And, a review of the ALJ's decision reveals that he fully considered the record evidence. As for the ALJ's reliance on Plaintiff's daily activities, including raising six children at the time of the hearing, I agree that the ALJ could not rely solely on those activities in discounting Plaintiff's allegations. However, it was not improper for the ALJ to consider such when assessing Plaintiff's credibility. *See* 20 C.F.R. § 404.1529(c)(3)(i). Although Plaintiff testified that her fifteen-year-old son helped with the children, caring for four children under the age of ten and a disabled teenager does tend to undercut the assertion of disability. Finally, I disagree with Plaintiff's assertion that the ALJ cherry-picked those portions of her doctors' records that supported an ability to work. In sum, while not all of the ALJ's reasons for discounting Plaintiff's allegations of disabling symptoms are supported by the record, the other reasons provided by the ALJ adequately support his doing so.

By her last claim, Plaintiff urges that the ALJ failed to pose a complete hypothetical question to the VE and thus the ALJ's reliance on the VE's testimony is not supported by substantial evidence. In particular, Plaintiff contends the ALJ should have included in the hypothetical her inability to stand or sit for more than 15 to 20 minutes at a time, walk for more than 50 feet, and reach overhead or lift with her right arm. Plaintiff also faults the ALJ's reliance on the VE's testimony that the three sedentary jobs identified would, in her experience, accommodate a sit/stand option. By this argument, Plaintiff contends that because the ALJ failed to ask the VE to explain the inconsistency between her testimony and the DOT, the VE's testimony does not provide substantial evidence on which the ALJ could rely.[13] Plaintiff also notes that the VE failed to provide DOT number for any of the jobs identified. (Doc. 22 at 19-21).

The Commissioner counters that, because the ALJ properly determined that Plaintiff retained the ability to perform past relevant work, the burden never shifted to the ALJ to identify other jobs Plaintiff could perform. In any event, the Commissioner summarily asserts that Plaintiff's argument regarding the hypothetical question is without merit. (Doc. 24 at 12). The Plaintiff is correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* (quoting *Brenem v. Harris*, 621

---

[13]Plaintiff cites *Leonard v. Astrue*, 487 F. Supp. 2d 1333 (M.D. Fla. 2007), *Estrada v. Barnhart*, 417 F. Supp. 2d 1299 (M.D. Fla. 2006), and Social Security Ruling 00-4p.

F.2d 688, 690 (5th Cir. 1980)). However, an ALJ need not include findings in the hypothetical that the ALJ has properly discounted or rejected as unsupported. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160-61 (11th Cir. 2004).

Contrary to Plaintiff's urging, I find that the hypothetical questions the ALJ posed to the VE were complete and the VE's responses thereto provided substantial evidence on which the ALJ could rely. The ALJ was not required to include Plaintiff's alleged inability to stand for more than 15 to 20 minutes at a time or to walk more than 50 feet in the hypothetical questions because the ALJ adequately discounted those limitations.[14] *See Crawford*, 363 F.3d at 1160-61. Likewise, the ALJ was not required to include in the hypothetical questions an alleged inability to reach overhead or lift with the right arm because Plaintiff did not testify to such. Rather, Plaintiff testified that she can lift and reach "some," but it hurts. (R. 362). Moreover, it is worth noting that Plaintiff was represented by counsel at the administrative hearing and counsel did not question the VE regarding any reaching or lifting restrictions. As for the other allegations of error, Plaintiff is correct that SSR 00-4p requires the ALJ to ask the VE whether her testimony is consistent with the DOT, and, if it is not, to elicit a reasonable explanation of the conflict from the VE. Here, the ALJ did just that. (R. 400). While Plaintiff is correct that the DOT does not address a sit/stand option, including one for the unskilled, sedentary jobs identified by the VE, her assertion that a VE's experience and expertise may not resolve the conflict is incorrect. *See Leonard*, 487 F. Supp. 2d at 1340 (recognizing that a VE could have relied on her own experience and observations in resolving

---

[14]In any event, the VE testified that there were a substantial number of jobs in the national economy that Plaintiff could perform even if a sit/stand option was added. (R. 399-400).

conflict between her testimony and the DOT, but the ALJ did not elicit such testimony); *cf.*

*Estrada*, 417 F. Supp. 2d at 1303-04 (remand required because the ALJ did <u>not</u> ask VE

whether her or his testimony conflicted with the DOT).  Finally, although Plaintiff is correct

that the VE did not identify the DOT numbers for the jobs she said Plaintiff could perform,

any error in this regard is harmless, particularly given that the unskilled, sedentary exertional

jobs she identified are easily identified in the DOT.  For these reasons, the VE's response to

each of the ALJ's hypothetical questions provides substantial evidence on which the ALJ

could rely.[15]

IV.

For the foregoing reasons, the decision of the Commissioner of the United States

Social Security Administration is in accordance with the correct legal standards and is

otherwise supported by substantial evidence.  The decision is affirmed.  Accordingly, the

Clerk is directed to enter Judgment in favor of the Defendant and to close the case.

**Done and Ordered** at Tampa, Florida, this 26th day of March 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of record

---

[15]To the extent that the VE's testimony regarding past relevant work does not provide substantial evidence on which the ALJ could rely, the ALJ's reliance on such is harmless given his reliance on the VE's testimony in response to the hypothetical question assuming an ability to perform unskilled, sedentary work with occasional postural limitations and requiring a sit/stand option.